IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RANDY HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:09cv01-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. Introduction**

Plaintiff Randy Hill ("Hill") applied for disability insurance benefits[1] pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is

---

[1] The plaintiff's insured status for purposes of disability insurance benefits expired on March 31, 2005.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social

now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3).  Pursuant

to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United

States Magistrate Judge conducting all proceedings in this case and ordering the entry of final

judgment.  Based on the court's review of the record in this case and the briefs of the parties,

the court concludes that the decision of the Commissioner should be reversed and this case

remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination,[3] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

(1)     Is the person presently unemployed?
(2)     Is the person's impairment severe?
(3)     Does the person's impairment meet or equal one of the specific
        impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)     Is the person unable to perform his or her former occupation?
(5)     Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next

---

Security matters were transferred to the Commissioner of Social Security.

   [3]   A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques.

> question, or, on steps three and five, to a finding of disability. A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the
> reasonableness of the [Commissioner's] . . . factual findings . . . No similar
> presumption of validity attaches to the [Commissioner's] . . . legal conclusions,
> including determination of the proper standards to be applied in evaluating
> claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction**.  Hill was 40 years old at the alleged date of onset of disability and

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

45 years old at the time of the hearing before the ALJ.[5]  (R. 17 & 80).  He has a tenth grade education.  (R. 19).  His prior work experience includes work as a laborer (R. 77) and a butcher (R. 23).  Following the hearing, the ALJ concluded that the plaintiff has severe impairments of osteoarthritis and herniated nucleus pulposus at L4-L5.[6]  (R. 75).  The ALJ further concluded that Hill has "a history of diverticular bleeding with acute anemia," but this condition was not a "severe medically determinable impairment" because it was treated and it did not meet the 12 month durational requirement to be considered severe.  (R. 75).  The ALJ further concluded that Hill had no mental impairment.  (*Id*.).

The ALJ found that Hill was unable to perform his past relevant work as a laborer but concluded that he

> has the residual functional capacity to perform work that does not require lifting or carrying more than 20 pounds occasionally or 10 pounds frequently; he can only perform work that will allow for difficulty bending, standing or sitting no longer than six hours in an 8 hour day; and work that requires no reading and no skills.

(R. 76).

Finally, the ALJ concluded that there exists jobs in significant number in the national economy that Hill could perform, and thus, he was not disabled.  (R. 77-78).

---

[5]  Hill testified at the administrative hearing that he was forty-five years old and that his birthday was September 1, 1960.  (R. 17).  This would make Hill 47 years old.  However, other documents demonstrate that Hill's birthday is actually September 1, 1962.  (R. 80-81, 98, 101, 109, 112).

[6]  The ALJ found that Hill had a severe impairment of "herniated" which is indicative of the lack of attention to detail in his opinion.  (R. 75).  The consultative examiner diagnosed Hill with a "herniated nucleus polposus at L4-L5 level."  (R. 172).  The court concludes that the ALJ's failure to include "nucleus polposus" was simply a scrivener's error.

4

**B. Plaintiff's Claims**.  As stated by Hill, he presents two issues for the Court's review:

1. The Commissioner's decision should be reversed, because the ALJ improperly rejected Mr. Hill's testimony concerning the limitations imposed by his medically determinable impairments.

2. The Commissioner's decision should be reversed, because the ALJ's residual functional capacity is inconsistent with the opinion of Dr. Crawford, to whom the ALJ assigned great weight.

(Pl's Br. at 3).

## IV. DISCUSSION

During the administrative hearing[7] after learning that Hill previously had worked as a butcher, the ALJ made the following comment: "King (sic) of wonderful what a nasty old pig can do once you cut it up."  (R. 23).  No matter how you slice it, the ALJ failed in his handling of this case.  An ALJ has a duty to develop a full and fair record.  *Kelley v. Heckler*, 761 F.2d 1538 (11ᵗʰ Cir. 1985).  The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review.  *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11ᵗʰ Cir. 1981).[8]  As will be explained, the court concludes that the ALJ failed to fully and fairly develop the record concerning the plaintiff's intellectual functioning and mental impairments.

---

[7] Characterizing the proceeding before the ALJ as an "hearing" requires a willing suspension of disbelief.

[8] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11ᵗʰ Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**A. Limited Intellectual Functioning**.  It is patently obvious from reading the transcript that Hill has limited intellectual ability.  What is not plain is the extent or effect of his limitation on his ability to work.

Q:      Mr. Hill, tell me, sir, how old are you?
A:      I'm 45.
Q:      Your date of birth?
A:      9-1-60

*       *       *

Q:      How much do you weigh?
A:      197
Q:      Is that your normal weight?
A:      No I wasn't, now that I lost weight since then.
Q:      Okay, how much [INAUDIBLE]
A:      I think my normal weight is usually 174.
Q:      Okay, you put on 20 pounds.
A:      Right.
Q:      Why?
A:      Huh?
Q:      Over what period of time did you put on 20 pounds?
A:      That's what the doctor told me at one time I should weigh.  I was
        weighing 203.
Q:      Okay, so you're about normal then.  . . .

        *       *       *

Q:      After you left high school did you get any education or training?
A:      No, sir.
Q:      Learn to read and write?
A:      Some, a little bit I do.
Q:      Well, you say a little bit, do you have enough reading to read a
        newspaper?
A:      Some [INAUDIBLE] some I can't.
Q:      You ever read the bible?
A:      No, sir, [INAUDIBLE] I don't.
Q:      Could you write me a letter to tell me about your medical problems?

6

A:     No, sir, I couldn't do that [INAUDIBLE]

Q:     You had a driver's license, how did you get that license?  You take a
       written test?

A:     Well, I failed it the first time, then the second time she read it out to me
       and [INAUDIBLE].

Q:     You know how to handle money and pay bills?

A:     No, my girl, my lady friend does all that.

Q:     No, I don't care what she knows how to do, I want to know what you
       know how to do.  Do you know how to handle money and pay bills?

A:     No, I never had did it, Judge, to be honest with you.

Q:     You never paid bills?

A:     No, I never had did it.

Q:     Well, if you pulled into a gas stations and you got $11.50 worth of gas
       and you handed the clerk a $20.00 bill how much money would that
       clerk have to give you back?  You got $20.00 –

A:     If I had a $20.00 bill?

Q:     a $20.00 bill take away $11.50, what's due to you?

A:     $7.50.

(R. 17-22).

Moreover, Hill testified that he failed the first grade and that he received special help

in school from his teachers beginning in the seventh grade and continuing until he dropped

out in the eleventh grade.  (R. 32).  At the conclusion of the hearing, Hill's attorney

suggested that the ALJ develop the record regarding Hill's intellectual abilities.[9]  The ALJ

declined that suggestion.

ALJ:    Well, I don't think it's necessary because the testimony as elicited was
        response to unskilled work with minimal reading ability, entry-level,
        unskilled, minimal reading, and he was worked in semi-skilled and
        skilled jobs in the past which would show at least a performance IQ that
        was fairly good.  Some people don't have verbal IQs that are so good
        but performance IQ is very good.  So, I don't see any need to pursue

---

[9]  Hill's lawyer said that he "would not be opposed if [the ALJ] so chose to develop the record
regarding [Hill's] intellectual abilities."  (R. 43).

> that at this point.  I really don't think the record needs to be developed
> [INAUDIBLE].  The past work shows that [INAUDIBLE].

(R. 43-44).

There is sufficient evidence in the record from which the ALJ should have concluded that it was necessary to secure additional evidence regarding the plaintiff's intellectual functioning before rendering a decision regarding his disability.  Hill testified that he failed the first grade, and had special help from teachers for four years.  This testimony, coupled with his colloquies with the ALJ during the administrative hearing, should have led the ALJ to conclude that additional information was needed to properly evaluate Hill's intellectual limitations.[10]   The ALJ's determination that the record did not need to be developed regarding Hill's intellectual capabilities is contrary to the evidence, and erroneous as a matter of law.

**B.  Mental Impairments**.  In addition to Hill's limited intellectual functioning, the ALJ failed to develop the record regarding whether Hill suffered from any additional mental impairments.  During the administrative hearing, Hill testified that he had been to the county mental health center "four or five times" because he was having difficulty sleeping.  (R. 28).  When the ALJ noted that he did not have the records from mental health, Hill's attorney responded that he was unaware that Hill had been to mental health.  (*Id.*).  Consequently, neither the ALJ nor the attorney ever sought the medical records of Hill's mental health

---

[10]   The ALJ's suggestion that Hill would score well on an IQ test because of his prior work as a brick mason's helper or butcher borders on the ludicrous aside from it being pure speculation.  Indeed, the ALJ's conclusion is tantamount to him substituting his opinion for that a psychologist or psychiatrist.

treatment.

Not only did the ALJ fail to get Hill's mental health records, he then compounded his error by failing to secure a consultative psychological examination for Hill. Where a consultative evaluation is needed to make an informed decision, it is error for an ALJ not to order such an evaluation. *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984). Under the circumstances of this case, the court concludes that there was sufficient information before the ALJ to require him to obtain a psychiatric or psychological evaluation about Hill's mental impairments so he could make an informed decision. "[I]n any case where there is evidence which indicates the existence of a mental impairment the . . . [Commissioner] may determine that the claimant is not disabled only if the . . . [Commissioner] has made every reasonable effort to obtain the opinion of a qualified psychiatrist or psychologist." *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988). While the ALJ is entitled to make credibility determinations, the ALJ may not substitute his judgment for the judgments of experts in their field of expertise. Psychiatrists deal with quintessentially subjective information with respect to which they must exercise professional, interpretive judgment. "'Even a "mild" mental impairment may "prevent [a] claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies.'" *Allen v. Sullivan*, 880 F.2d 1200, at 1202 (11th Cir. 1989).

By failing to secure Hill's mental health records and refer him for a consultative psychological examination, the ALJ improperly substituted his judgment for that of a

psychologist with respect to the question of whether the plaintiff has a mental impairment. The court concludes that the case should be remanded to further develop the record regarding the extent of the plaintiff's intellectual functioning and mental impairments and their effects on his ability to work.

    **C. Credibility Analysis and Pain**.  During the administrative hearing, Hill testified that he suffered from lower back pain, neck pain, headaches and dizziness.[11]  (R. 26, 31-33). The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.  *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  If the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Commissioner has, as a matter of law, accepted the testimony as true.  This rule of law is well-established in this circuit.  *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Holt v. Sullivan*, 921

---

[11]  Despite Hill's testimony, the ALJ in his analysis of the evidence simply ignores evidence that Hill suffers from headaches and dizziness.  Thus, the ALJ makes no findings regarding Hill's headaches or dizziness or pain related to these conditions in his disability determination.  The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).

    Even if the ALJ concludes that these impairments are not severe, he must still consider their effects on Hill's ability to perform work.  The ALJ must consider every impairment alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe - either singly *or in combination* - to create a disability.  *See Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986).  All of the plaintiff's impairments must be considered in combination, even when the impairments considered separately are not severe. *Hudson*, 755 F.2d at 785.

F.2d 1221 (11th Cir. 1991); *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986).

Moreover, "[p]ain is clearly a non-exertional impairment that limits the range of jobs the claimant can perform." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995); *Walker*, 826 F.2d at 1003 ("Pain is a nonexertional impairment."). *See also Phillips v. Barnhart*, 357 F.3d 1232, 1242 fn 11 (11th Cir. 2004) ("Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include . . . pain limitations. . .") Furthermore, in this circuit, pain itself can be disabling. *See Foote*, 67 F.3d at 1561; *Marbury v. Sullivan*, 957 F. 2d 837, 839 (11th Cir. 1992).

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate *reasons* for doing so, or the record must be obvious as to the credibility finding. *Foote*, 67 F.3d at 1561-62; *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

The ALJ acknowledged that Hill has impairments that would reasonably be expected

to produce the type of pain about which he complains but the ALJ then concluded that Hill's statements about his pain were "not credible to the extent that they are inconsistent with the residual functional capacity assessment for the reasons explained below." (R. 76). Without further explanation, the ALJ simply states that Hill's " actual impairments are anatomically incongruent with his degree of alleged impairments." (*Id.*). The ALJ's discussion of Hill's consultative examination and colon surgery are not *reasons* to discredit him. The facts recited by the ALJ might support reasons, but the ALJ did not articulate those reasons. Rote recitation of the medical evidence is not a substitute for articulating clear reasons for discrediting the plaintiff. Consequently, the ALJ's conclusory credibility analysis is simply deficient as a matter of law.

It also appears that the ALJ discredited Hill's testimony because he has not been referred to a pain clinic, and his medication was prescribed by a gastroenterologist and not an orthopedist. *See* R. 77. The problem with this analysis is that the ALJ failed to consider whether the plaintiff's financial ability influenced his ability to secure treatment. During the administrative hearing, the ALJ commented on Hill's failure to secure treatment.

> I'm asking what treating records are there? People that don't go to doctors, don't avail themselves of medical treatment in my opinion generally don't have much to complain about. People who need a doctor see a doctor. Makes sense doesn't it?

(R. 27).

The ALJ's cavalier comment is particularly disingenuous in light of Hill's testimony that he could not afford to see a doctor. "I haven't [been to a doctor] because they won't see

me because I don't have insurance and the proper way to pay them for the treatments." (R. 28). Hill testified at least twice during the hearing that he was unable to secure or afford treatment. (R. 28, 31). He told the consultative examiner that he was financially unable to secure or follow treatment. (R. 169). While failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, poverty excuses noncompliance with prescribed medical treatment or the failure to seek treatment. *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988). It is clear from the record that the ALJ heard testimony that Hill was unable to pay for treatment. Notwithstanding this evidence, the ALJ then failed to consider or further develop the evidence to determine whether Hill's failure to seek or obtain treatment was due to poverty. Consequently, the court concludes that the ALJ failed to develop the record regarding the plaintiff's financial situation as it relates to his failure to seek treatment.

**D. Residual Functional Capacity finding.** The ALJ determined that Hill suffers from severe impairments of osteoarthritis and herniated lumbar nucleus pulposes. He also determined that he

> has the residual functional capacity to perform work that does not require lifting or carrying more than 20 pounds occasionally or 10 pounds frequently; he can only perform work that will allow for difficulty bending,[12] standing or sitting no longer than six hours in an 8 hour day; and work that requires no reading and no skills.

(R. 76) (footnote added).

At the request of the Social Security Administration, Hill had a physical consultative

---

[12] Needless to say, this limitation makes no sense.

evaluation by Dr. Willis Crawford ("Crawford") on March 21, 2006.  (R. 169-72).  During

that evaluation, Dr. Crawford reported that Hill

> **has a considerable amount of difficulty in ambulation as well as in standing from a sitting position.  He guards his left knee more than anything else and seems to have a great deal of difficulty bending it**.
>
>        \*       \*       \*
>
> He is able to tandem walk.  He is unable to walk on his heels, toes, or hop.  He can move from the chair onto th exam table but has to make extra effort in order to get there by himself without help.  He is able to shake hands and dress without assistance.  He can write.  His left leg appears to be more affected or more painful at any rate more than any of his other extremities.
>
> IMPRESSIONS:
> 1.      Osteoarthritis, marked, generalized.
> 2.      Probably heriated nucleus pulposus at L4-L5 level.
> COMMENTS:  **This man can sit with difficulty and stand with more difficulty.  He can walk but he limps and guards his left knee.  He can lift light loads but he cannot carry anything.  He can hear and speak and travel.**

(R. 171-72) (emphasis added).

Despite Dr. Crawford's assessment that Hill could sit with difficulty, stand with more

difficulty and not carry anything, the ALJ concluded that Hill has the residual functional

capacity to sit or stand for six hours, and carry 20 pounds occasionally and 10 pounds

frequently.  (R. 76).  Although the ALJ refers to Dr. Crawford's report in his recitation of the

medical evidence, the ALJ makes no specific findings regarding Dr. Crawford's assessment

of Hill's residual functional capacity.  The ALJ is not free to simply reject a physician's

opinion without reason, nor may he pick and choose between the opinions selecting those

portions which support his ultimate conclusion.

At a minimum, the record demonstrates that there exists a conflict or ambiguity in the evidence regarding Hill's abilities to sit, stand and carry.  When there is a conflict, inconsistency or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected one opinion regarding the plaintiff's capacity for work over another.  In this case, the ALJ determined that Hill could sit or stand for no more than 6 hours and could carry up to 20 pounds, but he ignored the conflicting evidence that suggests Hill may not be able to stand or sit for that length of time or carry anything.  (R. 76-77).  An ALJ may not arbitrarily pick and choose facts from the medical evidence to support his conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence.  *Marbury*, *supra*.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence."  *Cowart*, 662 F.2d at 735.  "Failure to do so requires the case be vacated and remanded for the proper consideration."  *Hudson v. Heckler,* 755 F.2d 781, 785 (11th Cir. 1985).  Consequently, the court is unable to determine whether the ALJ's decision is supported by substantial evidence.

## V.  Conclusion

"Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting

benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).   In light of the inadequate development of the record, the court cannot determine whether the ALJ's conclusion that the plaintiff is not disabled is based on substantial evidence.   Accordingly, the decision of the Commissioner will be reversed and this case remanded to the Commissioner for further proceedings consistent with this opinion.

A separate final judgment will be entered.

It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after he receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

Done this 15th day of April 2010.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

16